## CONTINUATION OF AN APPLICATION FOR A SEIZURE WARRANT

I, TFO Andrew Merryweather, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this continuation of an application under 21 U.S.C. §§ 853(a), 853(f), for a warrant to seize the following property: $1,920 U.S. Currency (hereinafter referred to as SUBJECT CURRENCY) and one white gold rope chain necklace and "BTS" diamond pendant and one gold rope chain necklace and "UNDERDOG" diamond pendant (both chains and pendants referred to as the SUBJECT JEWELRY, collectively with the SUBJECT CURRENCY referred to as the **SUBJECT ASSETS**).

2. The **SUBJECT ASSETS** were seized on or about January 17, 2025, in Kalamazoo County, Michigan during the execution of a State of Michigan search warrant at 4756 Wimbleton Way, Kalamazoo, Michigan, and has remained in the lawful possession of law enforcement since seizure and is currently in the possession of the Drug Enforcement Administration (DEA) within this judicial district.

3. I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), a position I have held since May of 2024. I am also a Detective / Trooper with the Michigan State Police (MSP) and have been employed with the MSP since 2004. I am currently assigned to a multi-jurisdictional drug task force known as the Southwest Enforcement Team (SWET), which is part of the Fifth District of the MSP. I was previously assigned to the Southwest Enforcement Team (SWET) from 2015 through 2019.

4. I have attended schools, seminars, and lectures on drug enforcement. These drug related schools include Basic Narcotics School, Advanced Narcotics School, DEA/MSP Indoor Cannabis Grow School, Methamphetamine Basic Clan Lab Safety Course, DEA Task Force Officer school and Raid Entry School. I have participated in numerous narcotics investigations using a variety of methods including but not limited to visual surveillance, general questioning of witnesses, the use of search warrants, confidential informants, and undercover officers. My responsibilities include the investigation of criminal violations of Titles 18 and 21 of the United States Code.

5. In connection with my duties, I investigate criminal violations of the Federal and State controlled substance laws including, but not limited to, conspiracy and attempt to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846; possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); use of communication facilities to facilitate drug trafficking offenses, in violation of 21 U.S.C. § 843(b); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.S.C. § 1956(a)(1)(B)(i), and 18 U.S.C.§ 1957.

6. The information set forth in this continuation is based upon my personal knowledge and participation in the investigation described below, as well as information provided to me by other law enforcement officers. I have not set forth all of the information known to me or known to other law enforcement officers concerning this matter. This continuation is intended to show only that there is

sufficient probable cause for the requested seizure warrant.

7. On April 15, 2025, a federal grand jury in the Western District of Michigan returned an indictment charging Henry James HALL with the following crimes:

- Count 1: Distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

- Count 2: Distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

- Count 3: Distribution of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and

- Count 4: Possession with intent to distribute 50 grams or more of methamphetamine and other controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), (b)(1)(C). (*See* Case No. 1:25-cr-00048-HYJ.)

- Forfeiture allegation: the **SUBJECT ASSETS** pursuant to 21 U.S.C. § 853(a)(1), (a)(2)

8. The **SUBJECT ASSETS** are subject to criminal forfeiture to the United States pursuant to 21 U.S.C. § 853(a)(1), (a)(2) as any property, constituting or derived from, any proceeds obtained, directly or indirectly, or any property used, or intended to be used, in any manner or part, to commit, or to facilitate, the commission of the offenses charged in Counts 1-4.

## APPLICABLE FORFEITURE STATUTES

9. I am advised that 21 U.S.C. § 853(a)(1) provides for the criminal

forfeiture of any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of a violation of 21 U.S.C. § 841(a)(1). I am further advised that 21 U.S.C. § 853(a)(2) provides for the criminal forfeiture of any property that is used or intended to be used, in any manner or part, to commit, or facilitate the commission of a violation of 21 U.S.C. § 841(a)(1).

10. I am further advised that the government may request the issuance of a warrant authorizing the seizure of property subject to criminal forfeiture in the same manner as provided for a search warrant under 21 U.S.C. § 853(f). If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

11. For the reasons described herein, there is probable cause to believe that the **SUBJECT ASSETS** are subject to criminal forfeiture upon HALL's conviction for the offenses charged in the indictment, and that a restraining order is insufficient to assure the availability of the property for forfeiture.

## FACTS SUPPORTING PROBABLE CAUSE

I. Investigators utilize an undercover officer to Perform Three Controlled Buys of Fentanyl from HALL from December 2024 to January 2025

12. In December of 2024, Southwest Enforcement Team (SWET) undercover officer (the UC) identified Henry HALL as a distributor of fentanyl and other controlled substances the Kalamazoo, Michigan area. HENRY HALL has the

4

following prior convictions relating to drug trafficking: felony – conspiracy to distribute heroin (W.D. Mich. 2016); felony – controlled substance – delivery/manufacture cocaine, heroin or another narcotic less than 50 grams (2014).

13. The UC purchased fentanyl or heroin from HALL on three instances from December 2024 to January 2025. On December 9, 2024, the UC contacted HALL on his cell phone, (443) 683-2204, to arrange the purchase of an amount of fentanyl from HALL at a location within Kalamazoo County, Michigan. While under constant surveillance by SWET detectives, the UC drove to the meet location. Once at the meet location, the UC approached the passenger side of HALL's vehicle. The UC opened the passenger side door of HALL's vehicle and handed him $120 in pre-recorded SWET buy funds in exchange for a quantity of fentanyl. The UC stated while at the passenger side of the Chevy Malibu he contacted HENRY HALL and gave him a sum of prerecorded buy money in exchange for suspected fentanyl. The purchased substance was tested by the Michigan State Police Crime Laboratory and indicated positive as fentanyl. The UC identified HALL as the distributor of the drugs based on comparison to HALL's photograph with the Michigan Secretary of State. Before the deal, investigators surveilled HALL exit a common entrance of the Drake Ponds Apartment, eventually associated with 4756 Wimbleton Way. After the deal, HALL returned to the address and entered a common door for the apartment building.

14. On December 18, 2024, the UC contacted HENRY HALL at to arrange the purchase of fentanyl. HALL eventually set the location at a gas station in Kalamazoo County. Once at the meet location on December 18, 2024, the UC entered

5

approached HALL's silver / blue Chevy Equinox. The UC opened the passenger side door of HALL's vehicle and handed him $120 of pre-recorded SWET buy funds in exchange for a quantity of fentanyl. The purchased substance was tested by the Michigan State Police Crime Laboratory and indicated positive as fentanyl. Before the deal, investigators surveilled HALL exit the apartment 4756 Wimbleton Way. After the deal, HALL returned to the address and entered a common door for the apartment building.

15. On January 15, 2024, the UC contacted HENRY HALL to arrange the purchase of fentanyl / heroin. HENRY HALL and the UC later agreed to meet at a pre-determined location in Kalamazoo County, Michigan. Once at the meet location, the UC opened the passenger side door of HALL's vehicle and handed him $140 of pre-recorded SWET buy funds in exchange for a quantity of fentanyl / heroin. The purchased substance was tested by the Michigan State Police Crime Laboratory and indicated positive as heroin. Before the deal, investigators surveilled HALL exit the apartment 4756 Wimbleton Way. After the deal, HALL returned to the address and entered a common door for the apartment building.

II.    January 17, 2025 – Execution of Search Warrant for Subject Premises

16. On January 16, 2025, the Honorable Christopher T. Haenicke, Judge for the 8th District Court of Michigan, issued a warrant to search HALL's residence at 4756 Wimbleton Way, Kalamazoo, Michigan, HALL's silver / blue Chevrolet Equinox with Michigan registration EDK7381, and his person. With respect to 4756 Wimbleton Way, investigators surveilled HALL leaving and returning to the apartment or apartment building in connection with the three UC buys.

17. On January 17, 2025, HALL was driving the aforementioned Equinox, registered in his own name, at the time of the traffic stop and was the sole occupant. Police executed a traffic stop on Henry HALL in Kalamazoo County after he left 4756 Wimbleton Way. HALL was the driver and sole occupant of the vehicle. HALL was placed into handcuffs during the traffic stop and the vehicle was searched. MSP located $1,920 in U.S. Currency on HALL's person in a pant pocket (the SUBJECT CURRENCY). Based on my training and experience, I know that large sums of cash are indictive of drug trafficking.

18. To enter 4756 Wimbleton Way, investigators used the key found on HALL to enter the apartment and found no occupants. The apartment contained a single bedroom, laundry room, and kitchen. In the residence, investigators found multiple residency documents in HALL's name, including bank statements and a Cash App card. Drugs and drug trafficking paraphernalia were found in the bedroom closet and the kitchen. In a Clorox wipes container in the bedroom closet, investigators found what lab tested as 179.2 grams of 97% pure methamphetamine as well as other suspected cutting agents. In the kitchen closet / utility room, investigators found a bag containing multiple types of drugs that field tested as 8.9 grams of heroin / fentanyl. Investigators also found another bag containing many small tied off baggies that weighed approximately 32.3 grams and are suspected to be heroin / fentanyl. Investigators also found two digital scales and a kilogram press in the closet and other suspected cutting agents.

19. In the same bedroom closet where he possessed the methamphetamine, HALL possessed the SUBJECT JEWELRY. In the apartment, investigators also

7

found a September 30, 2024 appraisal from Hutch Jewelry in Oak Park, Michigan that appraised the two diamond pendants and gold chains at $56,450 (total).

20. After administering his *Miranda* rights, investigators questioned HALL about his drug trafficking and assets. When asked what was up in his apartment, HALL stated "ice," which I know based on my training and experience to be common code word for methamphetamine. HALL also admitted to possessing the methamphetamine for a year. HALL also stated that there was "not even a half bow of ice," which I know to refer to not even a half pound ("bow") of ice, consistent with the approximate weight seized. HALL also admitted to possessing "like 6 grams of heron" or heroin.

21. With respect to the jewelry, HALL provided inconsistent explanations of how he acquired the jewelry – at one point suggesting that it could have been purchased with the proceeds from federal COVID benefits and at another time stating that it was a gift or inheritance. In his post-*Miranda* interview, HALL also stated that he made between $150 and $250 per day mowing lawns and that he had not filed tax returns since 2021. Possession of jewelry of this value is also inconsistent with his stated income. Based on my training, experience, and familiarity with the investigation, I believe the SUBJECT JEWELRY contains proceeds and/or facilitating property for the offenses charged in the Indictment.

22. The **SUBJECT ASSETS** were lawfully seized by SWET in January 2025. To properly take custody of and process the property through judicial forfeiture in the federal criminal case, the DEA requires a federal seizure warrant.

## CONCLUSION

23.     Pursuant to 21 U.S.C. §§ 853(a), 853(f) and based upon the above facts, I request the issuance of a warrant authorizing the seizure of the seizure of the **SUBJECT ASSETS**, which is subject to criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1).